Thomas N. Petersen, OSB # 974645
Black, Chapman, Webber & Stevens
Attorneys at Law
221 Stewart Avenue, Suite 209
Medford, Oregon   97501
Telephone:   (541) 772-9850
Facsimile:   (541) 779-7430
Email: litigation@blackchapman.com
Attorney for Plaintiff

Diane Breneman,  Missouri State Bar #39988
Breneman Dungan, LLC
311 Delaware
Kansas City, Missouri 64105
Telephone:   (816) 421-0114
Facsimile:   (816) 421-0112
Email: db@litigationkc.com
Attorney Pro Hac Vice for Plaintiff

John L. Tippit,  Texas State Bar No. 20067500
Escobedo, Tippit & Cardenas, L.L.P.
3900 N 10th Street Suite 950
McAllen, Texas 78501
Telephone:   (956) 618-3357
Facsimile:   (956) 618-3361
Email: jtippit@etclaw.com
Attorney Pro Hac Vice for Plaintiff

FILED'10 AUG 13 14:38USDC-ORM

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF OREGON
MEDFORD DIVISION

| | |
|---|---|
| ROBERT JACOBY,<br><br>    Plaintiff,<br><br>BLITZ U.S.A., INC. and<br>WAL-MART STORES, INC.,<br><br>    Defendants. | Case No. 10-3075-CL<br><br>COMPLAINT FOR DAMAGES<br>8 U.S.C.1332, 1391 (a) (2)<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT                                                           1

## COMPLAINT

COMES NOW PLAINTIFF ROBERT JACOBY ("Plaintiff") complaining of Blitz U.S.A., Inc. ("Blitz") and Wal-Mart Stores, Inc. ("Wal-Mart") and allege the following:

## INTRODUCTION

On or about February 5, 2010, a gas storage container (hereinafter "subject gas can") manufactured by Blitz and sold by Wal-Mart exploded, causing Plaintiff to suffer severe burns. This action is brought against the Defendants to recover all damages to which Plaintiff is entitled as a result of the severe injuries and damages he sustained as set forth herein.

## PARTIES

1. Plaintiff is an individual and resident of the State of Oregon who resides in Jackson County, Oregon.

2. Blitz is an Oklahoma corporation that maintains its principal place of business in the State of Oklahoma.

3. Wal-Mart is a Delaware corporation that does business in the State of Oregon and which maintains its principal place of business in the State of Arkansas.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and diversity of citizenship exists between Plaintiff and Defendants.

5. Venue is proper in the District Court of the United States District Court for the District of Oregon, Medford Division pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in whole or in part within this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6. Blitz is in the business of designing, marketing, manufacturing and selling portable plastic gasoline cans.

7. Blitz designed, manufactured, marketed and sold a model of gas can known as the Blitz Self Venting Gas Can (hereafter "can").

8. Plaintiff purchased a can from Wal-Mart prior to February 5, 2010, filled it with gasoline from time to time and stored it in his garage.

9. The can was sold by Blitz to Wal-Mart for distribution in Oregon.

10. On or about February 5, 2010, Plaintiff retrieved a propane lighter and the can from his garage. The can contained a small amount of gasoline which was to be used to help dispose of a brush pile on his property.

11. Plaintiff placed the propane lighter on the ground approximately 30 feet away from the brush pile.

12. Plaintiff carried the can to the brush pile and poured a small quantity of gasoline on the pile. Plaintiff turned away from the brush pile and walked with the can approximately 15-20 feet away from the pile and approximately 28 feet from where the lighter was located. While he was walking to place the can on the ground, the can was swinging back and forth against his leg as he walked.

13. As Plaintiff began to set the can down, vapors outside the can ignited, flashing into the can and causing the can to explode and cover Plaintiff in burning gasoline.

14. Plaintiff dropped to the ground and rolled in an attempt to put out the flames, but because he was covered in gasoline, he could not extinguish the fire on his body. Plaintiff ran to his home and jumped into the shower to extinguish the flames on his body, tearing his clothes off in the shower. Emerging from the shower, Plaintiff called 911 for help.

15. Plaintiff was burned over 80% of his body, more than 75% third degree burns and he was conscious and alert while experiencing excruciating pain and suffering until he arrived at the hospital. Plaintiff spent over two months in a hospital burn unit, suffering through multiple surgeries, skin graphs and debridement procedures and is permanently scarred and disfigured.

## CLAIMS FOR RELIEF

### COUNT I - STRICT LIABILITY AS TO BLITZ ONLY [O.R.S. § 30.900, 30.920]

16. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 15 of the Complaint as though fully set forth herein.

17. Blitz is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling the can to consumers within the stream of commerce. Blitz designed, manufactured, assembled, marketed, distributed and sold the can that caused Plaintiff's injuries.

18. Blitz expected the can to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold. The can did in fact reach Plaintiff without a substantial change in the condition in which it was originally sold by Blitz and unexpectedly failed under ordinary and foreseeable use. The can was not modified or altered after it left Defendants' control, and Plaintiff was utilizing the can in a foreseeable and reasonable manner in which the can was reasonably expected to be used.

19. At the time the can left Defendants' control, and at all times complained of herein, safer alternative designs were available that would have eliminated the risk of the subject gas can exploding without substantially impairing the usefulness and intended purpose of the product.

20. The can was defective and unsafe for its intended purposes at the time if left Defendants' control in that the design failed to include a flame arrestor device, which is a necessary safety device that would have prevented Plaintiff's catastrophic burn injuries.

21. Blitz failed to act as a reasonable manufacturer by failing to implement a feasible alternative design to prevent foreseeable injuries and deaths from the lack of a flame arrestor on its gas cans.

22. Blitz failed to act as a reasonable manufacturer by failing to produce a gas can closure that would safely secure and prevent flammable gas fumes and liquid from

escaping the can. Blitz continued to sell its cans with the defective yellow closures despite Blitz' knowledge of this defect.

23. Blitz knew or should have known of the can's susceptibility to flashback and explosion, which occurs when gasoline vapors outside the can ignite and the flames follow the vapor trail back into the can, causing an explosion of the can and a release of burning gasoline and vapors and/or a flame thrower effect where burning vapors and liquid explode out of the can.

24. The can was unreasonably dangerous and defective in its design and manufacture because it did not incorporate a flame arrestor, a technologically and economically feasible safety device that would have prevented the explosion in the present case and because its closure system did not work appropriately to seal the can thereby increasing the risk of an explosion. Blitz failed to warn Plaintiff of the defective condition of the can and that cans such as the one Plaintiff purchased may explode if there is a flashback that follows the gasoline vapors back to the can.

25. A flame arrestor, sometimes called a flame arresting screen, flash arrestor or spark arrestor, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents the flashback of flames back into the container. The device consists of either a perforated metal disk or a wire mesh screen.

26. The efficacy of flame arrestors has been known to the gasoline manufacturing industry for decades. Manufacturers of portable gas cans for commercial use have been aware of their existence and included them in their design since before the

1950's. In the 1970's flame arresters were incorporated into cans marketed to the general public.

27. For more than a quarter century, the utility and efficacy of flame arrestors has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed by consumers, users, and bystanders who have been burned and/or killed in encounters with portable gas cans that were not equipped with the device.

28. Consequently, Blitz has known, or should have known, for decades prior to this incident that gas cans without flame arrestors were susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trails back inside the container causing it to explode and/or spew flames and burning gasoline.)

29. Without the inclusion of a flame arrestor, the foreseeable risk of injury and/or death associated with the use of the subject gas can far exceeded any utility and/or benefits associated with its design.

30. Nevertheless, despite the wealth of available scientific knowledge, Blitz has made, and continues to make, a conscious, willful, wanton and reckless decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate a well-known safety device into its portable gas cans, despite the fact that this safety device is economically and technologically feasible.

31. The can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was defective and/or unreasonably dangerous when sold.

32. The can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was the direct and proximate cause of Plaintiff's injuries and damages.

33. As a direct and proximate result of Defendants' collective acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Plaintiff suffered severe personal injuries, including, but not limited to, severe burns, severe physical pain and suffering, permanent scarring, psychological impairment, and emotional distress, in an amount not to exceed ten million dollars.

34. As a direct and proximate result of Defendants' collective acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Plaintiff has suffered reasonable and necessary medical expenses in the past and will incur reasonable and necessary medical expenses in the future in an amount which is currently unknown but which will be pleaded when ascertained.

35. As a direct and proximate result of Defendants' collective acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Plaintiff has suffered lost income and loss of earning capacity in amounts which are currently unknown but which will be pleaded when ascertained.

36. As a direct and proximate result of Defendants' collective acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Blitz is liable to Plaintiff pursuant to the provisions of O.R.S. § 30.900 (1), (2), (3) and 30.920 (1) (a) and (b).

37. In order to avoid liability in civil cases for damages such as this instant case, Blitz has destroyed or otherwise spoliated evidence which would tend to prove plaintiff's allegations in this and other similar cases that have been litigated in other states. Based upon the entirety of Blitz' actions as alleged in this paragraph and those

preceding it, Plaintiff reserves the right to amend the Complaint to request an award of punitive damages once discovery is completed.

## COUNT II– NEGLIGENCE
## AS TO BLITZ ONLY

38. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 37 of the Complaint as though fully set forth.

39. Blitz owed consumers and/or foreseeable users, including Plaintiff, the duty of reasonable care in its design, manufacture, assembly, marketing, distribution and sale of the subject gas can.

40. Blitz ignored and/or breached that duty by its following negligent acts and/or omissions:

    A. Failed to design and produce a reasonably safe can;

    B. Designed, manufactured, assembled, marketed, distributed, and sold a can that was defective;

    C. Placed into the stream of commerce a can that was defective in design;

    D. Placed into the stream of commerce a can that was defective in that it failed to contain adequate warnings and instructions;

    E. Placed into the stream of commerce a can that was unfit for its intended use;

    F. Placed into the stream of commerce a can that was likely to and did cause injury during its ordinary use;

G. Placed into the stream of commerce a can that contained manufacturing defects;

H. Failed to incorporate a flame arrestor in the product design;

I. Failed to properly test its can and prototypes thereof with flame arresting material;

J. Failed to provide adequate instructions and warnings with the can after learning, knowing, or having reason to know, of the defects existing in the can that rendered it unreasonably dangerous for its intended use;

K. Failed to provide adequate warnings that would be reasonably calculated to inform consumers and/or users of the nature and extent of the dangers involved in using or misusing its product;

L. Failed to actively seek information regarding incidents in which consumers, users, and bystanders were injured and/or killed when they encountered cans such as the one which injured Plaintiff;

M. Failed to actively seek information regarding incidents involving explosion and/or internal combustion of its cans;

N. Failed to provide post-sale warnings after learning, knowing, or having reason to know of the defects existing in the can that rendered it unreasonably dangerous for its intended use;

O. Failed to take subsequent remedial measures or to recall the can after learning, knowing, or having reason to know of the defects existing in the can that rendered it unreasonably dangerous for its intended use;

P. Ignored and/or failed to investigate scientific, technological and industry information and studies regarding the efficacy of flame arrestors for the can;

Q. Ignored and/or failed to investigate other lawsuits and/or similar incidents involving similar claims and incidents in which consumers, users, children, and/or bystanders were severely and routinely burned and/or killed when encountering the can;

R. Failed to report incidences and lawsuits involving other consumers, users, and bystanders who have been burned and/or killed when encountering the can to the Consumer Product Safety Commission;

S. Failed to warn that the can was not equipped with safety devices;

T. Sold the can when it knew it posed an unreasonable risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with this design outweighed its utility;

U. Blitz knew or should have known that consumers would use their can(s) to start and/or maintain a fire, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent ignition and flashback;

V. Blitz knew or should have known that there were design and manufacturing defects in the closures on its can that caused it to fall off and/or be lost or

         allowed users to fail to appropriately secure it, resulting in an open, or improperly sealed can which increased the likelihood of an explosion;

    W. On at least two occasions halted projects to equip its can with flame arrestors for financial and strategic legal reasons as opposed to safety considerations;

    X. Spoliated evidence which would tend to prove Plaintiff's allegations that Defendants are liable to Plaintiff.

    41.    As a direct and proximate result of Blitz's negligent acts and/or omissions, the can that caused Plaintiff's injuries was placed into the stream of commerce, in a defective and unreasonably dangerous condition, acting with complete indifference to, and in willful, conscious and reckless disregard for the safety of Plaintiff, and other foreseeable plaintiffs. After discovery is conducted, Plaintiff reserves the right to seek leave of the Court to amend his Complaint to seek punitive damage against Blitz for gross negligence.

    42.    Plaintiff's injuries and the manner in which they occurred were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from within the industry, national publications, media reports and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

///

///

///

## COUNT IV – STRICT LIABILITY
## AS TO WAL-MART ONLY
## [O.R.S. § 30.900, 30.920]

43. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 37 of the Complaint as though fully set forth herein.

44. Wal-Mart marketed, distributed and sold the can which was defectively designed and unreasonably dangerous for its anticipated, intended and foreseeable use in the following ways:

   A. Wal-Mart marketed and sold the can without a flame arrestor and/or other safety devices;

   B. Wal-Mart participated in and impacted the design of Blitz' can, and in particular the design of the closures on the can and knew that it had the ability to impact the design of Blitz' can;

   C. Wal-Mart failed to provide adequate warnings to Plaintiff about the inherent dangers involved in the use of the can it marketed and sold;

   D. Wal-Mart sold Blitz gas cans to the public that contained manufacturing defects;

   E. Wal-Mart knew or should have known at the time it supplied the can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer/purchaser, and the risks associated with this design outweighed its utility;

F. Wal-Mart knew or should have known of other available gas cans that were available to safeguard consumers from the foreseeable dangers associated with gasoline use and to significantly reduce and/or eliminate the risk of flammable vapor ignition, and Wal-Mart failed to offer such cans for sale and instead sold the defective Blitz can to Plaintiff and knew of incidents where Blitz gasoline cans such as the one Wal-Mart sold to Plaintiff had exploded, causing burn injuries;

G. Wal-Mart knew or should have known that consumers would use gas cans to start and/or maintain fires, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback;

H. With the knowledge that plastic gas cans not equipped with flame arrestors were exploding, Wal-Mart sought on at least two occasions to significantly increase sales to customers and decrease its product cost from Blitz as opposed to insisting on a fix to prevent their customers from suffering severe burn injuries and even dying;

45.   Wal-Mart had actual knowledge of the defects in the can and other Blitz cans as alleged above, Wal-Mart had actually joked about the dangers of the can at its management and supplier meetings, and Wal-Mart put the can into the stream of commerce, acting with complete indifference to, and in willful, conscious and reckless disregard for the safety of Plaintiff, and other foreseeable plaintiffs. After discovery is

conducted, Plaintiff reserves the right to seek leave of the Court to amend his Complaint to seek punitive damage against Wal-Mart.

46. Wal-Mart had actual or constructive knowledge of the defective conditions of the subject gas can alleged above at the time it sold the can to Plaintiff.

47. As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein and as a direct and proximate result of the gas can's defective design, Wal-Mart is liable to Plaintiff pursuant to the provisions of O.R.S. § 30.900 and 30.920.

## COUNT IV – NEGLIGENCE
## AS TO WAL-MART ONLY

48. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 of the Complaint as though fully set forth herein.

49. Wal-Mart owed consumers and/or foreseeable users, including Plaintiff, the duty of reasonable care in its marketing, distribution and sale of the can.

50. As a direct and proximate result of Wal-Mart's negligence, the can was marketed, distributed and sold in a defective condition, and it was unreasonably dangerous when used as intended and when put to reasonably anticipated and/or foreseeable use by persons such as Plaintiff.

51. Plaintiff's injuries and subsequent, and the manner in which they occurred, were reasonably foreseeable to Wal-Mart, which knew or should have known that people such as Plaintiff were being severely burned when encountering Blitz gas containers, including the can.

52. As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein, Plaintiff suffered the injuries and harms outlined in paragraphs 33, 34, and 35 of the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows on all Counts:

1. Past medical expenses in an amount according to proof;

2. Future medical expenses in an amount according to proof;

3. Lost income, past and future in an amount according to proof;

4. Loss of wage earning capacity in an amount according to proof;

5. Pain and suffering in an amount not to exceed $10,000,000.00.

6. Costs and expenses;

7. For such other relief as the court deems just and proper.

///

///

///

///

///

///

///

///

///

## TRIAL BY JURY

Pursuant to FRCP 38, plaintiff hereby demands a Jury Trial.

Respectfully submitted, this the 13th day of August, 2010.

Thomas Petersen, OSB # 974645
Black, Chapman, Webber & Stevens
Telephone: (541) 772-9850
litigation@blackchapman.com
Attorney for Plaintiff

Diane Breneman, Missouri State Bar #39988
Breneman Dungan, LLC
Pro Hac Vice
Telephone: (816) 421-0114
db@litigationkc.com
Attorney for Plaintiff

John L. Tippit, Texas State Bar No. 20067500
Escobedo, Tippit & Cardenas, L.L.P.
Pro Hac Vice
Telephone: (956) 618-3357
jtippit@etclaw.com
Attorney for Plaintiff